**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IBRAHIM QASIM and NOUH QASIM, | : |
| Plaintiffs, | : **Civil Action No. 21-18744 (JXN) (JRA)** |
| v. | : |
| | : **OPINION** |
| SPECTRUM BRANDS HOLDINGS, INC., *et al.*, | : |
| Defendants. | : |

**NEALS**, District Judge:

This matter comes before the Court on Defendants Spectrum Brands Holdings, Inc. ("SBHI"), United Industries Corporation ("United Industries"), Liquid Fence Company, and The Home Depot, Inc.'s ("Home Depot") motion to exclude the opinions and testimony of James Pugh, PH.D., P.E. ("Dr. Pugh") pursuant to Federal Rule of Evidence 702 and for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 42). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).

For the reasons set forth below, Defendants' motion to exclude the opinions and testimony of Dr. Pugh and for summary judgment (ECF No. 42) is **GRANTED** in part and **DENIED** in part. Counts One, Three, and Four in Plaintiffs' Complaint (ECF No. 1-1) ("Compl." or "Complaint") are **DISMISSED with prejudice**. The claims against Home Depot are **DISMISSED with prejudice**. All other relief is **DENIED**, and the Court shall conduct a *Daubert* hearing regarding the admissibility of Dr. Pugh's expert report and testimony prior to trial, pursuant to *Daubert v. Merrill Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993).

I.      BACKGROUND AND PROCEDURAL HISTORY

A.  **The Underlying Incident**

On August 26, 2019, Plaintiff Ibrahim Qasim ("Ibrahim") purchased EcoLogic Bed Bug

Killer 2 (the "Product") from Home Depot. [1]  (Defs.' Statement of Undisputed Material Facts (ECF

No. 43-12) ("DSOF") ¶ 1[2]; Pls.' Responsive Statement of Material Facts and Supplemental

Statement of Disputed Material Facts (ECF No. 49-1) ("PSOF") ¶ 1).  The Product was "designed,

manufactured, labeled, and packaged by United Industries."  (DSOF ¶ 10; PSOF ¶ 10).

Thereafter, on September 5, 2019, between 9:00 AM and 10:00 AM, Ibrahim sprayed the

Product in the living room of the studio apartment he shared with Plaintiff Nouh Qasim ("Nouh").

(DSOF ¶¶ 16-17; PSOF ¶ 16-17).  Several hours after Ibrahim sprayed the Product,[3] a fire started in

the kitchen at the gas stove where Nouh was making coffee.  (DSOF ¶ 19).[4]

B.  **Plaintiffs' Expert: Dr. Pugh**

Plaintiffs retained Dr. Pugh as an expert.  (DSOF ¶ 27; PSOF ¶ 27).  Dr. Pugh summarized

his analysis in an expert report.  (ECF No. 42-11 at 4-6).  Dr. Pugh purchased a "14 ounce aerosol

can of Eco[L]ogic Bed Bug Killer" as an "exemplar" of the Product purchased and used in their

apartment at the time of the fire.  (ECF No. 42-11 at 4).  As part of his review, Dr. Pugh analyzed

---

[1] Because Plaintiffs share the same last name, the Court refer to them by their first names, intending no disrespect.
[2] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.
[3] The parties dispute when the fire occurred: Defendants assert the fire occurred at approximately 5:15 PM (DSOF ¶ 20), while Plaintiffs contend the fire occurred between 1:00 PM and 3:00 PM (PSOF ¶¶ 62-63).
[4] In their Rule 56.1 statement, Plaintiffs deny this statement to the extent it "specifies that the conflagration occurred 'at' the gas stove" and asserts "the conflagration occurred at or near the gas stove," but fail to cite to any evidence in support.  (PSOF ¶ 19).  Local Civil Rule 56.1(a) provides that opponents of summary judgment must furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, including agreement or disagreement and, if not agreed, *stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion[.]*" (Emphasis added).  Thus, where a fact stated in a movant's Rule 56.1 statement is supported by evidence, the Court finds such fact to be true where the non-movant merely denies it: (1) with a conclusory statement, (2) without evidentiary support, or (3) with the recitation of additional facts but without actually contesting the asserted proposition.  *See, e.g.*, *Marsh v. GGB, LLC*, 455 F. Supp. 3d 113, 118 n.2 (D.N.J. 2020); *V.C. ex rel. Costello v. Target Corp.*, 454 F. Supp. 3d 415, 419 n.4 (D.N.J. 2020); *Read v. Profeta*, 397 F. Supp. 3d 597, 612 n.3 (D.N.J. 2019).  As such, the Court accepts this fact as unrebutted because there is no record evidence submitted that contradicts it.

the following: (i) "the photographs of the container of Eco[L]ogic Bed Bug Killer used by . . .

[P]laintiffs"; (ii) the exemplar can; (iii) "the Safety Data Sheet for Eco[L]ogic Bed Bug Killer"; (iv)

"the specifications for Sodium Azide"; and (v) "the specifications for Sodium Benzoate, one of the

components of the Eco[L]ogic Bed Bug Killer." (*Id.*)

> Dr. Pugh expressed:
>
> The Safety Data Sheet for the Eco[L]ogic Bed Bug Killer indicates that it is flammable and must not be used in the presence of heat or open flame. The can of Eco[L]ogic Bed Bug Killer lists sodium benzoate as a component, and in very small print, necessitating a magnifying glass, "Do not use or store near heat or open flame." There was none of the three hazard pictograms, nor signal words, nor adequate hazard statements on the can itself, all of which are mandated by the Safety Data Sheet, and as mandated by the ANSI Z35 and Z535 series of standards. Further, there was no information as to how long to wait prior to exposing treated areas to an open flame such as a cigarette lighter, a match, or a gas-range.
>
> Further, the container of product used in the accident has the verbiage "Safe Around Children & Pets" with an associated pictogram showing a child and a pet prominently present on the front of the container and as the first and topmost alerting instruction provided. The presence of wording, and pictogram all are misleading and necessarily create an illusion of safety in the use of the product, and is dissuasive of a user proceeding further in the reading of the instructions, particularly in the absence of additional pictograms such as the open flame pictogram. . . .
>
> Further, in addition[ ] to the aerosol product being flammable in and of itself, sodium benzoate, one of the components of the Eco[L]ogic Bed Bug Killer, dries to a white dusty powder, which is explosive in nature.

(ECF No. 42-11 at 4-5).

After summarizing Plaintiffs' interpretation of the events that occurred leading up to, and

including, the fire, Dr. Pugh opined:

> I have therefore concluded, to a reasonable degree of scientific, engineering, ergonomic, and human factors certainty, that the defective labeling of the product was the proximate cause of the accident. Had an open flame pictogram been prominently displayed as the child and pet pictogram was displayed, the plaintiff would have noticed that the product was flammable and would not have taken necessary precautions to avoid ignition of the product.

(ECF No. 42-11 at 5).

### C.  Procedural History

On August 18, 2021, Plaintiffs filed their Complaint in the Superior Court of New Jersey, Law Division, Essex County and alleged causes of action for: (i) Strict Products Liability: Design Defect (First Count), (ii) Strict Products Liability: Failure to Warn (Second Count), (3) Negligence (Third Count), and (4) Violations of the Consumer Fraud Act ("CFA") (Fourth Count).  (*See generally* Compl.).  On October 15, 2021, Defendants removed the action to the United States District Court for the District of New Jersey on the grounds of diversity of citizenship.  (ECF No. 1).

On October 13, 2023, Defendants filed the pending motion seeking to exclude the opinions and testimony of Dr. Pugh and summary judgment ("Br.") (ECF No. 42), to which Plaintiffs opposed ("Opp'n") (ECF No. 45), to which Defendants replied ("Reply").  (ECF No. 46).  This matter is now ripe for consideration.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law."  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted).  The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial."  *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted).  There can be "no genuine [dispute] as to any material fact" if a party "fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.    ANALYSIS

### A.  The PLA Subsumes Plaintiffs' Negligence and Consumer Fraud Act Claims

Plaintiffs have alleged four common law claims. (*See generally* Compl.). Defendants argue that the New Jersey Products Liability Act ("PLA"), N.J. Stat. Ann. § 2A:58C-1, *et seq.*, subsumes those common law claims and thus all of Plaintiffs' common law claims must be dismissed. (Br. at 16-19)). In their opposition, Plaintiffs do not explicitly address this argument and instead refer to this matter as a "failure to warn" case. (Opp'n at 11-12). As discussed below, the Court finds the PLA controls and dismisses the negligence (First Count) and CFA claims (Fourth Count).

"[T]he PLA codified certain issues relating to the common law governing product liability actions."[5] *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 152 (N.J. 2020). In doing so, "[t]he

---

[5] The PLA provides:

A manufacturer or seller of a product shall be liable in a product liability action only if the claimant

[PLA] left intact the three theories under which a manufacturer or seller may be held strictly liable for harm caused by a product—defective manufacture, defective design, and defective warnings." *Roberts v. Rich Foods, Inc.*, 654 A.2d 1365, 1370 (N.J. 1995) (internal quotation marks omitted). "If a claim is premised upon a product's manufacturing, warning, or design defect, that claim must be brought under the PLA." *Sun Chem Corp.*, 235 A.3d at 155; *see also In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007) ("The language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products."). Thus, "the [ ]PLA generally subsumes common law product liability claims," making the PLA "the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991).

In their opposition brief, Plaintiffs expressly acknowledge their "claim is based upon the failure of the Product to contain adequate warnings or instructions." (Opp'n at 12). Because Plaintiffs' claims are predicated on a failure to warn, each is subsumed by the PLA and subject to dismissal. *See Sun Chem. Corp.*, 235 A.3d at 155 (explaining that "claim[s] . . . must be brought under the PLA"); *see* N.J. Stat. Ann. § 2A:58C-1(b)(3) (defining a "[p]roduct liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty"); *see also Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 822 (D.N.J. 2019) (collecting cases discussing fraud claims sounding in products liability that were subsumed by the PLA); *Brown ex*

---

proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.

*rel. Est. of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 516 (D.N.J. 2002) (collecting cases).

Although a plaintiff can "avoid [PLA] subsumption" by "assert[ing] a negligence claim that arises from the independent conduct of a defendant, which is unrelated to the inherent defect in the product, itself," Plaintiffs have not done so here. *Hindermyer*, 419 F. Supp. 3d at 823. Accordingly, notwithstanding Plaintiffs' "attempt[ ] to shoehorn [their] allegations into other causes of action, it is clear" that Plaintiffs' negligence and CFA claims (Third and Fourth Counts) "sound in products liability causes of action" and must be dismissed. *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 824 (D.N.J. 2021); *see Medford v. Eon Labs, Inc.*, No. 20-cv-00412, 2021 WL 5204035, at *3 n.3 (D.N.J. Nov. 9, 2021) (dismissing the plaintiffs' claims "to the extent . . . [they] assert[ ] negligence claims under New Jersey law and . . . consumer fraud claims under the New Jersey Fraud Act" because they were "subsumed by the [PLA]").

### B. A *Daubert* Hearing Must Be Conducted Before Considering Defendants' Motion for Summary Judgment on the Failure to Warn Claim

Defendants argue that Dr. Pugh is not qualified to render fire origin and causation opinions and his opinions are unreliable and subject to exclusion. (Br. at 19-24). In opposition, Plaintiffs contend expert testimony is not needed for its failure to warn claim, and even if expert testimony is necessary, Dr. Pugh should not be precluded. (Opp'n at 15-20). As the Court finds a *Daubert* hearing is necessary before resolution of the motion, the motion for summary judgment on the failure to warn claim is denied without prejudice.

"Under strict products liability a manufacturer has a duty to ensure that the products it places into the stream of commerce are safe when used for their intended purposes." *Zaza v. Marquess and Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996). To recover in a products liability action, a plaintiff must prove that the product (1) was defective, (2) when it left the defendant's control, and (3) caused injury to a reasonably foreseeable user. *Id.* "Defects are classified as design

7

defects, manufacturing defects, or inadequate warning defects." *Id.* at 628.  In an inadequate

warning case, the defect is not a structural flaw in the product itself, but rather a failure to provide

notice to potential users that the product could cause injury.  *Coffman v. Keene Corp.*, 628 A.2d

710, 716 (N.J. 1993).

"Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability

and fit."  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations

omitted).  The Third Circuit has "long stressed the importance of in limine hearings under Rule

104(a) in making the reliability determinations under Rule 702 and *Daubert*."  *Padillas v. Stork-*

*Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999).  The decision to hold a *Daubert* hearing "rests in

the sound discretion of the district court."  *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114,

119 (3d Cir. 2014) (quoting *Padillas*, 186 F.3d at 418).

Here, Defendants' motion for summary judgment on the failure to warn claim hinges on

the admissibility of Dr. Pugh's report and testimony regarding the causation of damages.[6]

Although Defendants' arguments appear to be well-founded, the resolution of this motion requires

a *Daubert* hearing.  The Court will therefore deny the motion for summary judgment on the failure

to warn claim (Second Count) without prejudice and schedule a *Daubert* hearing before trial.  *See*

*Daubert*, 509 U.S. at 589 (recognizing the district court's role as gatekeeper to ensure that all

expert testimony and evidence is relevant and reliable); *Martin v. Blaser Swisslube, Inc.*, No. 03-

6116, 2005 WL 3454291, at *7 (D.N.J. Dec. 16, 2005) ("A motion for summary judgment should

be denied without prejudice pending the outcome of a *Daubert* hearing, when disposition of the

---

[6] As discussed *supra*, Plaintiffs describe this action as a "failure to warn" case and do not address their design defect in their opposition papers.  (*See* Opp'n at 11-12).  Where a party fails to "respond to . . . arguments on [certain] claims or mention them at all in [their] brief," those claims are waived.  *Yucis v. Sears Outlet Stores, LLC*, No. 18-15842, 2019 WL 2511536, at *4 & n.4 (D.N.J. June 18, 2019) (collecting cases), *aff'd as modified*, 813 F. App'x 780 (3d Cir. 2020).  Accordingly, the Court dismisses the design defect claim (First Count) with prejudice.

motion depends on a determination of the admissibility of expert testimony.").

### C. **The Claims Against Home Depot are Dismissed**

Finally, the Court addresses Home Depot's assertion that it is entitled to summary judgment because it is an "innocent seller" under N.J. Stat. Ann. § 2A:58C-9. (Br. at 33). In its opposition brief, Plaintiffs do not address this argument. The Court agrees with Home Depot and will dismiss the claims against Home Depot with prejudice.

N.J. Stat. Ann. § 2A:58C-9 provides, in relevant part, that:

> a. In any product liability action against a product seller, the product seller may file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage.

> b. Upon filing the affidavit pursuant to subsection a. of this section, the product seller shall be relieved of all strict liability claims, subject to the provisions set forth in the section d. of this section . . . .

N.J. Stat. Ann. § 2A:58C-9(a), (b). Put another way, a product seller can escape liability under the PLA "by filing an affidavit correctly identifying the manufacturer of the product." *Claypotch v. Heller, Inc.*, 823 A.2d 844, 850 (N.J. Super. Ct. App. Div. 2003) (citing N.J. Stat. Ann. § 2A:58C-9(b). The PLA outlines the circumstances under which a product seller is *subject* to strict liability and provides that,

> c. The product seller shall be subject to strict liability if:

> (1) The identity of the manufacturer given to the plaintiff by the product seller was incorrect. Once the correct identity of the manufacturer has been provided, the product seller shall again be relieved of all strict liability claims, subject to subsection d. of this section; or

> (2) The manufacturer has no known agents, facility, or other presence within the United States; or

> (3) The manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate.

N.J. Stat. Ann. § 2A:58C-9(c).

9

The PLA also outlines the circumstances under which a product seller *shall* be liable and

provides that,

> d. A product seller shall be liable if:
>
> (1) The product seller has exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage; or
>
> (2) The product seller knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or
>
> (3) The product seller created the defect in the product which caused the injury, death or damage.

N.J. Stat. Ann. § 2A:58C-9(d).

The seller bears the burden of proof of showing it does not fit into any of these exceptions.

*See Bashir v. Home Depot*, No. 08-04745, 2011 WL 3625707, at *4 (D.N.J. Aug. 16, 2011)

(citations omitted).  A party moving for summary judgment on an affirmative defense "would bear

the burden of proof at trial and therefore must show that it has produced enough evidence to

support the findings of fact necessary to win." *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232,

237 (3d Cir. 2007) (footnote omitted).

The Court finds Home Depot has set forth adequate, undisputed evidence to establish it

constitutes an "innocent seller."  Pursuant to N.J. Stat. Ann. § 2A:58C-9, Home Deposit submitted

an affidavit of Javier Medina, a Litigation Specialist.  (*See generally* ECF No. 42-4).  The affidavit,

which Plaintiffs do not dispute, attests that United Industries (i) designed, manufactured, labeled,

and packaged the Product, (ii) is a properly joined as a party to this lawsuit, and (iii) is capable of

satisfying any judgment.  (DSOF ¶¶ 10, 15; PSOF ¶¶ 10, 15).  Additionally, Home Depot was

neither involved in nor exercised control over the design, manufacture, labeling, or packaging of the Product, and sold the Product upon receipt from United Industries without altering, repacking, or relabeling the Product.  (DSOF ¶¶ 11-12; PSOF ¶¶ 11-12).  Accordingly, the Court grants summary judgment in favor of Home Depot and dismisses all claims against it with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to exclude the opinions and testimony of Dr. Pugh and for summary judgment (ECF No. 42) is **GRANTED** in part and **DENIED** in part. Counts One, Three, and Four in Plaintiffs' Complaint (ECF No. 1-1) ("Compl." or "Complaint") are **DISMISSED with prejudice**.  The claims against Home Depot are **DISMISSED with prejudice**.  All other relief is **DENIED**, and the Court shall conduct a *Daubert* hearing regarding the admissibility of Dr. Pugh's expert report and testimony prior to trial.

An appropriate Order accompanies this Opinion.

DATED: 9/30/2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge